Albert J. Marino, J.
The jury returned a verdict in favor of the plaintiff against the City of New York in the sum of $150,000. The defendant the City of New York cross-claimed against the defendant Advance Brick and Sand Corp., sole lessee in possession of the one-story brick building.
We are concerned with the lattter action for contribution by the said defendant Advance Brick and Sand Corp., hereinafter called “Advance”, if concurrently negligent with the city, on the theory of Dole v. Dow Chem. Co. (30 N Y 2d 143), based on the relative degrees of negligence of the city and Advance.
Many lawyers read into Dole “ comparative negligence ”; in fact, a couple of Judges, anticipating the emergence of comparative negligence, jumped the-gun, in a manner of speaking, and decided the case before them to that effect. However, Dole has absolutely nothing to do with regard to comparative negligence; the latter concerns recovery by plaintiffs despite a percentage of contributory negligence on plaintiff’s part.
Dole concerns defendant joint tort-feasors and contribution by each as regards damages, according to the percentage of the concurrent negligence of each.
There is no doubt that ‘ ‘ comparative negligence ’ ’ is waiting in the wings ready to take the spotlight of center-stage, but must await the cue by the Legislature of the State or the Court of Appeals. Such a judicial trend is evident in our sister States as well. (See Maki v. Frelk, 85 Ill. App. 2d 439; O’Brien v. Bethlehem Steel Corp., 59 N. J. 114.)
At the outset of the trial of the prime action, the plaintiff discontinued against the defendant owner Charlotte Horowitz. The defendant Samuel Seidenberg was not served. At the close of the plaintiff’s case the plaintiff discontinued without costs and *218 with prejudice against the defendant Advance. Thus, the only defendant left in the prime action was the city.
The plaintiff, now age 87 years, was 84 years old at the time of the accident, which occurred on June 30, 1969 at approximately 7:00 p.m. on the sidewalk adjacent to the driveway at 156 McKibben Street, Brooklyn, New York. The accident, however, is alleged to have happened not on the driveway but immediately adjacent to it, on its right side. The plaintiff sustained serious injuries, necessitating nine weeks’ confinement in the Kingsbrook Hospital, and thereafter went to and since continues to reside at Shore View Nursing Home. The plaintiff fractured the head of the femur on his left side, necessitating an operation and insertion of a prothesis; subsequently, a second operation was required. The current costs at the nursing home are approximately $340 per week. At the time of the trial, which began on October 13,1972, the expenses were in excess of $54,000, although paid for by Medicare, etc. The plaintiff was not out of pocket for these expenses but the city under our rules of evidence was unable to bring this out.
We are concerned in the cross action by the city with the percentages to be paid by the city and defendant Advance, if the latter is also liable, according to the proportionate degrees of the concurrent negligence of each.
Plaintiff testified and marked plaintiff’s Exhibit No. 1, a photograph, with an “ X ” to indicate the spot at which he fell. He testified that there was a hole thereat; that the hole was 7 inches to 8 inches deep; the picture indicates that the broken part of the sidewalk is not in the driveway but immediately adjacent to it, on the right side. A subsequent witness, to wit, an officer, vice-president of Advance, one Jerome Brown, testified that there was a hole at the site marked by the plaintiff in the aforesaid plaintiff’s Exhibit No. 1 photograph, and that the hole was 2 inches to 3 inches deep. Mr. Brown also testified that he went to the premises three to five times per week and remained there for at least several hours each day. He testified that the condition regarding the broken sidewalk existed for at least several years. A photograph marked defendant’s Exhibit “ B ” was admitted into evidence, on objection by defendant Advance on the city’s cross action, with the proviso that the jury would not consider or take into consideration the vehicles, a truck and three cars, that were parked on the sidewalk. They were admonished to blank out in their minds, when viewing the photographs, those vehicles. It was considered by all parties that if tape were to cover the vehicles on the photograph, it would exclude *219 certain other pertinent and relevant parts of the photograph which the jury had to take into consideration. I will refer later to the vehicles in defendant’s Exhibit “ B ” only for the purposes of impeachment of the credibility of the witness Brown; it will be recalled that the plaintiff at the close of plaintiff’s case discontinued the action against Advance.
Counsel for the city and the defendant Advance stipulated on the record that the city’s cross action against Advance should be tried and determined by the court on the facts as well as on the law.
The witness Brown throughout his testimony has a thread running through it whereby it reveals a pattern of being helpful to the plaintiff. I will recite but several examples that I feel indicate that he was lying as to material matters and that his testimony was therefore unworthy of belief.
The witness Brown stated that plaintiff’s Exhibit No. 1 was a fair representation of the condition of the sidewalk as it existed on June 30, 1969. He testified that said condition existed for several years and that there was a hole at the point marked by plaintiff in plaintiff’s Exhibit No. 1 with an “ X ” and that the depth of that hole was “ about 2 to 3 inches.” I respectfully submit that a perusal of the photograph, plaintiff’s Exhibit No. 1, will show what I would consider a breakage of the sidewalk at the point adjacent to the driveway and marked with an “ X ”, which breakage I feel would be better described as a fragmentation or crevices or splits of the concrete thereat, rather than a hole. I understand a hole to be a cavity. However, I do not want to indulge in semantics and I will adopt the description “ hole ” as testified. I respectfully submit that a study of the picture reveals that the depth at that point of the alleged hole is much less than an inch and not 7 or 8 inches deep as testified to by plaintiff and by Brown (Advance’s officer), the convenient witness for the plaintiff, as being 2 to 3 inches deep. Even Mr. Brown whose firm had much to gain in assisting plaintiff by plaintiff’s discontinuance with prejudice of the prime action resulting in $150,000 verdict against the city only, had to show caution in contradicting the plaintiff and dared not say that the hole was 8, or even 7 inches deep. At best he would only go so far as to say it was 2 to 3 inches deep. I find that even Mr. Brown has greatly exaggerated and deliberately lied as to the depth of the hole indicated by plaintiff in plaintiff’s Exhibit No. 1; that it was not deep at all. Mr. Brown testified that the defendant corporation of which he was vice-president, dealt in used bricks and that the building was used *220 exclusively by said defendant corporation Advance and that the building housed 17 to 18 trucks. Mr. Brown denied that he ever saw any trucks on the sidewalk. As to testing his credibility only, defendant’s Exhibit, letter “B” in evidence shows four vehicles, one a truck, which contains a section that lifts up and dumps its cargo, be it bricks or otherwise, onto the ground or where required. He also denied that he did business with any New Jersey outfits. He conveniently did hot recall doing business with ‘ ‘ Robert Bubnis, 104 E. 28th Street, Bayonne, New Jersey ”, which legend appears on the aforementioned dump truck. The photograph, defendant’s Exhibit letter ‘ ‘ B ” gives the lie to the testimony of Mr. Brown. When we look at the photograph we see that there are vehicles, including a dump truck, on the sidewalk and the dump truck is adjacent to the driveway, and that his firm did do business with outfits from New Jersey. In addition thereto, there was evidence that Advance placed two signs, one on either side of the driveway, on the building stating “No Parking.”
I find from all the evidence in this case and from natural inferences that I can draw therefrom, that trucks did use the sidewalk. In fact, to such an extent that I feel warranted in finding that strange trucks must have been using the sidewalk and that the signs were placed there to prevent unwarranted trucks on that sidewalk.
I find that the witness Brown has deliberately lied as to material portions of his testimony and that it was done undoubtedly for and in consideration of plaintiff’s discontinuance against his firm. I find further therefore that his testimony is not to be believed and is to be stricken out in its entirety (see Deering v. Metcalf, 74 N. Y. 501; Cibulski v. Hutton, 47 App. Div. 107; see People v. Perry, 277 N. Y. 460; Moett v. People, 85 N. Y. 373; see Ann. 4 ALR 2d 1077).
Counsel for plaintiff at the end of plaintiff’s case in the prime action moved to discontinue as against defendant Advance on the ground that he had no evidence to offer that said defendant Advance used the sidewalk for its own special use, other than the driveway-; that it negligently caused and permitted trucks to mount the sidewalk; that defendant Advance by reason of its negligence broke the sidewalk adjacent to the driveway and had its trucks and other trucks mount the sidewalk thereat, and they too caused the broken condition on said sidewalk adjacent to the driveway, and that besides creating the said broken condition of the sidewalk the defendant Advance negligently main- \ tained the said broken condition without repairing same.
*221 Why could not plaintiff, who passed along this sidewalk each day to shop for groceries, etc., testify to facts sworn to by him in his verified complaint and bill of particulars! He swore these facts were true. What stopped him from testifying to those facts alleged in the verified complaint and bill of particulars! He certainly was not required to discontinue his case with prejudice and would have made out a prima facie case. This certainly would not have happened had Advance been the sole defendant. Was this done as a favor to Advance and Mr. Brown!
I find that the defendant Advance created the condition described as a hole in the sidewalk, adjacent to the driveway. The jury found the sidewalk adjacent to the driveway to be defective and dangerous, and caused the plaintiff’s injury and damages. It is with the greatest reluctance that I let the jury’s verdict against the city in the prime action stand, but only if proper apportionment according to the concurrent negligence of each is made and allowed herein on the city’s cross action. Otherwise, I would set aside the verdict as being contrary to the weight of the evidence and order a new trial (CPLR 4404, subd. [a]).
As I view the facts in the city’s cross 'action, the fragmentation which they call a “ hole ” is a split of concrete, undoubtedly caused by some external force that caused crevices, cracks and splits of the concrete but not to any perceptible depth. Plaintiff claims the front of his shoe was caught in the hole. I find that it was impossible for a portion of plaintiff’s shoe to go into the crevice or “ hole ” shown in the picture (plaintiff’s Exhibit No. 1 in evidence). How is it that other parts of the sidewalk are not broken except near the driveway! This supports the argument that external force was the cause. The city becomes liable and is charged with negligence for failure to keep the sidewalk in a reasonably safe condition for pedestrians and is charged with constructive notice after the passage of a reasonable period of time for the failure to discover the condition that is dangerous and unsafe, and to repair same. However, this condition was not so easily and readily discoverable but on the cross action I will abide by the jury’s finding.
However, it is my conclusion that the city should pay a small part only of the award to plaintiff. I find that the defendant Advance and the City of New York are concurrently negligent, but in greatly disproportionate degrees. I find that Advance is chargeable with 90% due to its far greater negligence, and the city is chargeable with 10 % due to its minimum negligence.
*222 Justice and equity triumph under Bole. Defendant Advance is stuck with Brown’s admission that there was a hole and it was 2 to 3 inches deep. I have found that Advance created the condition by its special use of the sidewalk.
Therefore, I award judgment in the cross action by the City of New York against the defendant Advance in favor of the defendant City of New York against the said defendant Advance Brick and Sand Corp. in the sum of .$135,000.